**Kathy DUNAGIN et al., Plaintiffs,**

v.

**The CITY OF OXFORD, MISSISSIPPI, et al., Defendants.**

**No. WC 79-83-WK-P.**

United States District Court, N. D. Mississippi, W. D.

May 2, 1980.

Grady F. Tollison, Jr., Oxford, Miss., for plaintiffs.

G. A. Gafford, Oxford, Miss., Hubbard T. Saunders, IV, Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

KEADY, Chief Judge.

This class-action lawsuit challenges the constitutionality of Mississippi laws that ban the advertising of certain alcoholic beverages. At issue is whether the free speech clause of the First Amendment prevents the state from forbidding liquor advertisements and whether the Twenty-first Amendment empowers the state to ban liquor advertisements regardless of any First Amendment protections. Suit was brought by the editor and business manager of *The Daily Mississippian*, a newspaper published by students of the University of Mississippi at Oxford. Representing past, present and future editors and business managers,[1]

1. By order of February 26, 1980, the court certified this case as a class action, the class consisting of:

All past, present and future students elected or appointed to an editorial or business manager's position with *The Daily Mississippian*, a newspaper published by students at the University of Mississippi.

plaintiffs named as defendants the City of Oxford, its Mayor and the City Aldermen (collectively referred to as City). Because plaintiffs drew into question the constitutionality of a Mississippi statute, we granted the State of Mississippi permission to intervene as a defendant. *See* 28 U.S.C. § 2403(b).

Plaintiffs invoke the court's jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) for cause of action under 42 U.S.C. § 1983. They seek declaratory and injunctive relief and attorney's fees. Pending before the court are the State's motion to stay or dismiss this suit pending the outcome of a similar case in the United States District Court for the Southern District of Mississippi, *Lamar Outdoor Advertising v. Mississippi State Tax Commission*, No. J78–0472(R); cross motions for summary judgment on the merits of the dispute; and plaintiffs' motion to dismiss the City's abuse-of-process counterclaim for failure to state a claim upon which relief can be granted.

## I.

The facts of this case are undisputed.[2] Early in 1979, *The Daily Mississippian* ran advertisements for beer in some of its issues. Subsequently, an Oxford city police-

man visited the offices of *The Daily Mississippian* to advise the editor that the paper should cease advertising beer because state law prohibits it. This visit was followed, on March 29, by a letter from Hon. G. A. Gafford, Oxford City Attorney. Gafford wrote the editor that the City had received a number of complaints concerning beer advertising in the local papers. He recounted that the Chief of Police had discussed the matter with *The Daily Mississippian*'s editor and with the editor of the *Oxford Eagle*, a local paper neither affiliated with the University nor party to this suit. He stated that the *Oxford Eagle* had agreed to discontinue advertising of beer or other intoxicating beverages but that *The Daily Mississippian* continued to advertise beer in violation of Miss. Code Ann. § 97–31–1 (1972), which makes unlawful the publishing of a newspaper that contains advertisements for certain alcoholic beverages.[3] Gafford continued:

By your insistence in circulating these advertisements you indicate a complete unwillingness to cooperate with the responsible officials of the City of Oxford. By continuing this practice you will force the City of Oxford to seek injunctive relief as required by law. In addition,

2. As mandated by Rule 56, F.R.Civ.P., we find that the record discloses "no genuine issue as to any material fact."

3. Section 97–31–1, with the portions attacked in this lawsuit underlined, reads as follows: It shall be unlawful for any person, firm, corporation or association, or any servant, official or employee thereof, (1) to advertise upon any street car, railroad car, or other vehicle of transportation, or at any public place or resort, or upon any sign or billboard, or by circulars, poster, price lists, newspapers, periodicals, or otherwise, within this state, alcoholic, intoxicating or spirituous liquors, or intoxicating bitters or other drinks which if drunk to excess, will produce intoxication, including among others, brandy, whisky, rum, gin, ale and porter, or to advertise the manufacture, sale, keeping for sale or furnishing of any of them, or the person from whom, or the firm or corporation from which, or the place where, or the method by which same, or any of them, may be obtained; (2) to circulate, publish, sell, offer for sale, or expose for sale, any newspaper, periodical, or other written printed matter in which any advertisement specified in this section shall ap-

pear, or to permit any sign or billboard containing such advertisement to remain upon one's premises; or (3) to circulate any price list, order blanks, or other matter, for the purpose of inducing or securing orders for said liquors, bitters, and drinks, or any of them hereinbefore mentioned, no matter where located. Any sheriff, constable, or other police officer, is authorized to remove any such advertisement from any sign, billboard or other public place, when it comes to his notice, and shall do so upon demand of any citizen. Any advertisement or notice containing the picture of a distillery, bottle, keg, barrel or box, or other receptacle represented as containing any liquors, bitters or drinks mentioned or designed to serve as an advertisement thereof, shall be within the inhibition of this section.

Enforcement of § 97–31–1 is effected through § 97–31–3, which provides for injunctive relief and criminal penalties upon violation. The City enforces § 97–31–1 through § 19–1 of the City Code. This section makes all misdemeanors under state law offenses against the City as well.

your advertising policies jeopardize the license of those you represent, jeopardizes [*sic*] the freedom of some of those for whom you advertise inasmuch as beer is illegal in Lafayette County outside of the city limits of Oxford with the campus falling in that classification, and you jeopardize access to beer and other liquors as a legal commodity to all of the citizens of Oxford and others residing therein which includes a lot of students.

What you apparently preceive [*sic*] as a service to your readers really boils down to a disservice to the entire community.

This is a request that you consider the adoption of a policy which would eliminate the advertisement of intoxicating beverages in your paper.

Plaintiffs filed suit on June 7. Their initial complaint alleged that they had in the past advertised beer and wished to do so in the future. Conceding that the challenged statute does not prohibit the advertising of beer, as opposed to other alcoholic beverages, defendants moved to dismiss for lack of case or controversy.[4] U.S. Const. art. III. Plaintiffs' counsel responded in their brief that a controversy continued to exist because plaintiffs wished to advertise alcoholic beverages other than beer. Since the complaint did not contain such an allegation, the court granted the motion to dismiss unless plaintiffs amended their complaint to allege either a past practice of advertising liquor or intoxicating beverages other than beer or an intent to do so in the future. Plaintiffs complied, alleging that they desired to advertise liquor other than beer but were threatened by the City's position as reflected in Gafford's letter.

In the meantime the City had retreated somewhat from that position. On June 29 the City filed an ex parte "stipulation" that it would take no action against *The Daily Mississippian* to enforce § 97–31–1 pending the outcome of this case. Most recently, in

its answer to plaintiffs' amended complaint, the City said that it will not attempt to secure compliance with the statute until its constitutionality is determined in *Lamar Outdoor Advertising v. Mississippi State Tax Commission*, a similar case pending in the United States District Court for the Southern District of Mississippi, and that it would abide by the result reached in that case. The City included in its answer a counterclaim for abuse of process on the ground that plaintiffs harassed it by filing this suit because the City has no intention of interfering with plaintiffs' constitutional rights.

## II.

At the outset, we inquire whether this lawsuit presents a case or controversy as required by Article III of the United States Constitution. If not, then we are without jurisdiction to proceed. *See, e.g., Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The court acts with caution because the City has stated on the record that it has no intention of attempting to enforce § 97–31–1 until *Lamar* is resolved and that it will abide by the outcome of that case. It is possible that the City will never again threaten plaintiffs with the statute, and the State of Mississippi has not taken any steps to enjoin or prosecute plaintiffs.

Before the City represented to plaintiffs that it would not attempt, at least for the time being, to enforce § 97–31–1, a case or controversy did exist. However, the constitutional requirement must be met at all times during the course of suit, not just at the outset. *Ellis v. Dyson*, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); and, "as a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.'" *County of Los Angeles v. Davis,*

---

**4.** Section 97–31–1 was enacted as 1916 Miss. Laws ch. 104. At that time, it specifically included beer as one of the beverages prohibited to be advertised. By 1934 Miss. Laws ch. 172, the legislature expressly deleted beer from the

prohibition list. This is manifest from Chapter 172's title, which recites that it was "an Act to amend Section 2025 of Mississippi Code of 1930 [predecessor of § 97–31–1] so as to permit the advertising of wines and beer."

440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), *quoting United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Thus the City's assurances of non-prosecution do not render plaintiffs' claim nonjusticiable. Rather, the court must consider whether it can be said with assurance that no reasonable expectation exists that the threatening conduct will recur and whether "interim relief or events have completely and irrevocably eradicated" its effects. *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383. *See Vitek v. Jones*, —— U.S. ——, ——, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980). "When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383.

We do not find these conditions satisfied in the case sub judice. It is true that the City might never prosecute plaintiffs because the federal court in the Southern District of Mississippi might declare the challenged statute unconstitutional in *Lamar*. However, the court could also rule the other way or dispose of the case without reaching the merits. Furthermore, there is no way to determine when the Southern District court may decide the case. During the interim the City might change its policy and elect to prosecute after all.

As to the second condition, the effects of the City's previous threats linger. Plaintiffs are in limbo over whether to advertise because, despite the City's present assurance that it will not proceed against them, at any time in the future the City may decide to prosecute. Plaintiffs derive income from running advertisements; the uncertainty surrounding the legality of doing so must surely be reflected in their success at soliciting advertisements from potential customers hesitant to participate in breaking the law. Moreover, although the City has not threatened plaintiffs with criminal prosecution, the possibility that it may remains. We therefore conclude that this action does involve a case or controversy and that we consequently have jurisdiction to proceed.

## III.

The State has moved the court to dismiss this claim without prejudice because a similar lawsuit, *Lamar Outdoor Advertising v. Mississippi State Tax Commission*, No. J78–0472(R), which was filed before this action, is pending in the United States District Court for the Southern District of Mississippi. As grounds therefor, the State relies upon "the doctrine of federal comity, a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district." *Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 749 (9 Cir. 1979). This doctrine rests on considerations of judicial economy and the desire to avoid inconsistent decisions; "the general principle is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

■ "In its classic formulation, the comity doctrine permits a district court to decline jurisdiction over a matter if a complaint has already been filed in another district." *Scientology*, 611 F.2d at 749. The first-to-file rule should not be disregarded lightly, but exceptions to it are warranted when the policies underlying it would be better served. *Id.* at 750. The maxim is not law but is merely a generalized rule-of-thumb for applying the comity doctrine. It is to be considered in light of other factors and resolved in the court's discretion. 36A C.J.S. *Federal Courts* § 355(8) & nn. 52–53.20 (1961).

■ The State in essence makes two points in its motion to dismiss. First, it argues that the first-to-file rule-of-thumb is controlling. But as seen above, this rule is no more than a description of the circumstances in which the federal comity doctrine most frequently is invoked to achieve the goal of judicial efficiency. In *Scientology* the Ninth Circuit declined to apply the rule because proceedings in the second court had progressed past those in the first court. A similar situation exists here. The case sub

judice is before us on motions for summary judgment, but summary judgment in the Southern District case has been denied. Because the facts surrounding our case are simple and without dispute, summary judgment is appropriate and will help to avoid substantial litigation in *Lamar.*

Second, the State contends that *Lamar* involves a challenge to Mississippi's entire liquor advertising regulatory scheme. In comparison, the gist of plaintiffs' attack here involves the constitutionality only of Miss. Code Ann. § 97–31–1. Because *Lamar* is more comprehensive of the issues involved, says the State, this court should defer to the Southern District as the more appropriate and efficient arbiter of the dispute.

Rather than a reason to dismiss, we regard the relative complexity of *Lamar* as a basis to retain jurisdiction of the present suit. This case has crystallized; it is ripe for decision on the merits. Because in *Lamar* many parties wish to advertise alcoholic beverages through various communicative media it may well be some time before the court can act on it. An adjudication now will cause a timely disposition of the dispute between the parties before us. We accordingly exercise our discretion in favor of proceeding to the merits rather than dismiss this cause on account of *Lamar.*

IV.

■ Initially, we consider whether the First Amendment prohibits Mississippi from banning liquor advertisements in *The Daily Mississippian* on the basis of their content. The First Amendment, which binds the states through the Fourteenth Amendment, provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." The freedom of speech stands in a preferred position vis-a-vis other constitutional rights, *see, e.g., Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), because it "has been recognized as one of the preeminent rights of Western democratic theory, the touchstone of individual liberty." J. Nowak, R. Rotunda, & J. Young, Handbook on Constitutional Law 712 (1978).

■ Even so, the freedom of speech is not absolute. The constitutional protection accorded free speech comes into play only when the communication in question is viewed as "speech." Some words or conduct are not considered "speech" because they do not propound ideas or contribute to "truth, science, morality, and arts in general." *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957) (obscenity). *See also, e.g., Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ("fighting" words); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (burning draft card). Such activities are not entitled to constitutional protection.

Plaintiffs contend that the speech questioned here is "commercial" speech, or speech designed to culminate commercial transactions. The genesis of the commercial speech doctrine is found in *Valentine v. Chrestensen,* 316 U.S. 52, 54, 62 S.Ct. 920, 921, 86 L.Ed. 1262 (1942), where the Court held that "the Constitution imposes no . . . restraint on government as respects purely commercial advertising." So, in years past, "commercial" speech, as opposed to speech that, for example, "communicated information, expressed opinion, recited grievances, protested claimed abuses, and sought financial support on behalf of a movement whose existence and objectives are matters of the highest public interest and concern," *New York Times Co. v. Sullivan,* 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964), was not accorded First Amendment protection. However, distinguishing between commercial and noncommercial speech proved difficult in practice. With *Pittsburgh Press Co. v. Pittsburgh Commission on Human Rights,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973), and *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), the Court virtually abolished the commercial speech doctrine, *see Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 759, 96 S.Ct. 1817, 1824, 48 L.Ed.2d 346 (1976).

██ Nonetheless, differing standards of regulation for commercial and noncommercial speech remain. Noncommercial speech is subject to reasonable time, place, and manner restriction. Such regulation must not rely on the content of the speech, must serve a significant governmental interest, and must leave open "ample alternative channels for communication of the information." *Virginia State Board*, 425 U.S. at 771, 96 S.Ct. at 1830 and cases cited therein.

██ In contrast, commercial speech is subject to "proper" time, place, and manner regulation. *Id.* This standard is less restrictive than that which government must meet to regulate noncommercial speech. It has "afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). *See Friedman v. Rogers*, 440 U.S. 1, 10 n.9, 99 S.Ct. 887, 894 n.9, 59 L.Ed.2d 100 (1979). *See also Virginia State Board*, 425 U.S. at 771 n.24, 96 S.Ct. at 1830 n.24. With commercial speech, the interests of the speaker and the audience must be balanced, but the scale tips more toward regulation in noncommercial than in commercial speech cases. However, the state may not go so far as to suppress completely "the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients." *Id.* at 773, 96 S.Ct. at 1831.

Application of the commercial speech doctrine with respect to the truthfulness of commercial speech may be found in a number of suits in which advertisers and the

Federal Trade Commission clashed over the content of advertisements. *See, e.g., National Commission on Egg Nutrition v. FTC*, 570 F.2d 157 (7 Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86 (1978). More to the point here is *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073 (5 Cir. 1976), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977), in which the Fifth Circuit upheld the right of a student newspaper's editor to refuse to run an advertisement that the court found tended to promote illegal homosexual activities. As Judge Goldberg noted in dissent, the majority's reasoning could be "read as an implicit holding that the . . . ad was 'unprotected' speech for first amendment purposes" because of that tendency. *Id.* at 1078. *Goudelock* echoes the proposition that information about activity not "entirely lawful" is not constitutionally protected speech and therefore may be "completely suppress[ed]" by the state. *See Virginia State Board*, 425 U.S. at 773, 96 S.Ct. at 1831. *See also Bates v. State Bar of Arizona*, 433 U.S. 350, 384, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977) ("Advertising concerning transactions that are themselves illegal obviously may be suppressed."), *citing Pittsburgh Press*, 413 U.S. at 388, 93 S.Ct. at 2560.[5]

Because Mississippi completely suppresses the advertisement of alcoholic beverages,[6] resolution of this case depends upon whether liquor advertising promotes an "entirely lawful" activity.[7] If it does not, liquor advertisements are either not speech protected by the First Amendment or speech that the state may nonetheless ban because of its content.

Under Mississippi's Local Option Alcoholic Beverage Control Law, Miss. Code Ann. § 67–1–1 *et seq.*, it is unlawful "to manu-

5. *Cf. High Ol' Times, Inc. v. Busbee*, 456 F. Supp. 1035 (N.D. Ga. 1978) (advertisement assailing controlled substances laws not a direct solicitation of unlawful activity).

6. The State argues that it has not completely suppressed alcoholic beverage advertising because liquor retailers are free to advertise within their stores. We reject this argument on the authority of *Linmark Associates, Inc. v. Will-*

*ingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), which held prohibition of "For Sale" lawn signs tantamount to complete suppression.

7. We do not reach the question whether the content of any certain liquor advertising or advertisements may be truthful.

facture, distill, brew, sell, possess, import into this state, export from the state, transport, distribute, warehouse, store, solicit, take order for, bottle, rectify, blend, treat, mix or process any alcoholic beverage." *Id.* § 67–1–9 (1972 & Supp. 1979).[8] However, a county or in some instances a judicial district thereof may remove itself from this state-wide prohibition by majority vote within the county. *Id.* §§ 67–1–11, –15. It is then legal to possess and transport alcoholic beverages within the county and to manufacture, sell, and distribute them in the county's incorporated municipalities, qualified resort areas, and clubs. *Id.* § 67–1–7. Nearly half of Mississippi's 82 counties have voted themselves out from under the prohibition. Lafayette County, within which lies the University of Mississippi, is "wet." Of the seven counties bordering on Lafayette County, four are "dry."[9]

The Local Option Law does not expressly forbid the advertising of alcoholic beverages in "dry" areas, but it is beyond peradventure that such advertising must contribute to and encourage violation of the statute. This is true whether or not the newspaper is circulated only in a "dry" county because advertisement of liquor is apt to encourage consumers in "dry" counties to violate the law by purchasing liquor in "wet" counties for transportation home. This factor is exacerbated in the case of *The Daily Mississippian* because its principal readers are University students, particularly mobile citizens who come to Oxford from all sections of Mississippi to attend school. Some students doubtless purchase liquor in Oxford to take with them when they return home or visit with friends or relatives in "dry" counties.[10]

Because liquor advertising promotes activity illegal in a substantial portion of Mississippi, we hold that the State may regulate *The Daily Mississippian's* advertising of it even to the point of an absolute ban.[11] We reach this conclusion on two

---

8. The Local Option Law defines "alcoholic beverage" to exclude wine and beer containing 4% alcohol by weight or less. Miss. Code Ann. § 67–1–5(a) (Supp. 1979).

9. These are Tate, Union, Pontotoc, and Calhoun Counties. Marshall, Panola and Yalobusha Counties are "wet."

10. We also note that many of the students and other readers are under the age of 21. Even in "wet" counties a minor may not purchase or possess liquor. Miss. Code Ann. § 67–1–81 (Supp. 1979).

11. Even if complete suppression of liquor advertising were otherwise viewed as improper, balancing the interests at stake demonstrates that the State could nonetheless extensively regulate alcoholic beverage advertising. Mississippi has the duty of safeguarding the health, safety, and general welfare of its citizens. It is a medically known fact that alcohol is dangerous to consumers because it causes alcoholism and death due to heart disease, cancer, cirrhosis of the liver, and accidents of various kinds. Wider availability of alcohol leads to higher rates of alcoholism and mortality. The purpose of advertising alcoholic beverages is to promote consumption and thereby stimulate sales of alcoholic beverages. Increased sales of these beverages are highly correlated with increased problems associated with their use.

Recognizing these dangers, the Mississippi Legislature expressed its position in § 67–1–3 of the Local Option Law:

The policy of this state is reannounced in favor of prohibition of the manufacture, sale, distribution, possession and transportation of intoxicating liquor, and the provisions against such manufacture, sale, distribution, possession and transportation of intoxicating liquor, as contained in Chapter 31 of Title 97, Mississippi Code of 1972 and elsewhere, are hereby redeclared the law of this state. The purpose and intent of this chapter is to vigorously enforce the prohibition laws throughout the state, except in those counties voting themselves out from under the prohibition law in accordance with the provisions of this chapter, and, in those counties, to require strict regulation and supervision of the manufacture, sale, distribution, possession and transportation of intoxicating liquor under a system of state licensing of manufacturers, wholesalers and retailers, which licenses shall be subject to revocation for violations of this chapter.

The courts of Mississippi have also noted alcohol's harmful effects. *See Stepp v. State*, 202 Miss. 725, 33 So.2d 307 (1948).

Compared to the State's interests, *The Daily Mississippian*'s economic interest in advertising alcoholic beverages and "the societal interest in the 'free flow of commercial information,'" *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978), *quoting Virginia State Board*, 425 U.S. at 764, 96 S.Ct. 1831, are minimal. The beneficent effects of advertising seen in *Virgin-*

grounds. First, we hold that under *Virginia State Board* liquor advertisements are not commercial speech within the protection of the First Amendment because they promote activity unlawful in Mississippi. Therefore, the State may regulate them as it pleases. Second, we hold that even if liquor advertisements are viewed as protected commercial speech in "wet" areas of Mississippi, they are subject to total suppression because they necessarily advocate activity illegal in "dry" areas of the State. Under *Virginia State Board*, the State may completely suppress the otherwise protected communication because it proposes activity not entirely lawful in Mississippi.[12]

## V.

▮▮▮▮ We do not rest this decision solely on permissible limitations on commercial speech. We also rely on the Twenty-first Amendment, which repealed the national prohibition imposed by the Eighteenth Amendment. Section 2 of the Twenty-first Amendment states: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Of course, the states, through their general police power, have the authority to regulate their internal affairs subject to the limitations imposed by the Constitution; but the Twenty-first Amendment gives the states extraordinary regulatory authority when the subject of regulation is alcoholic beverages. *California v. La Rue*, 409 U.S. 109, 114–15, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972); *Oklahoma Alcoholic Beverage Control*

*Board v. Burris*, 612 P.2d 257 No. 52,197 (Okla. Apr. 15, 1980).[13]

The reach of the Twenty-first Amendment is finite; it does not supersede all other constitutional provisions in the area of liquor regulation. *La Rue*, 409 U.S. at 115, 93 S.Ct. at 395. The "Court's decisions . . . have confirmed that the Amendment primarily created an exception to the normal operation of the Commerce Clause. . . . Once passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful." *Craig v. Boren*, 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976) (citations omitted). Even then, the Twenty-first Amendment does not vitiate the commerce clause. Each constitutional provision must be read with the other in mind, and their application is dependent on "the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964). *See Craig*, 429 U.S. at 206, 97 S.Ct. at 461; *La Rue*, 409 U.S. at 115, 93 S.Ct. at 395.

▮▮▮ In the case sub judice, the Twenty-first Amendment collides not with the commerce clause but with the First Amendment. In *La Rue*, the Supreme Court confronted a similar situation. Plaintiffs, who operated bars and nightclubs in which other plaintiffs performed lewd dances and various sordid acts with customers sued the California Department of Alcoholic Beverage Control to declare unconstitutional and enjoin enforcement of regulations promulgated by the Department. These regula-

---

*ia State Board*, for example—the dissemination of comparative drug prices to poor, sick, and aged consumers—do not extend to alcoholic beverage advertising because greater availability at a lower price contributes to the harmful effects caused by greater consumption. Moreover, there is no constitutional right to buy or possess alcoholic beverages. *Cf. Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (contraceptive devices constitutionally protected).

**12.** For another view, see Op. Tenn. Att'y Gen. (Apr. 11, 1980).

**13.** [A]ny analysis of the validity of a state statute regulating liquor does not proceed via the traditional route for testing the constitutionality of state statutes. We must proceed from a vantage point of presumed state power and then ask whether there are any limitations to that power, always keeping in mind that where intoxicating liquors are concerned, great deference must be accorded a comprehensive state regulatory scheme.

*Castlewood International Corp. v. Simon*, 596 F.2d 638, 642 (5 Cir. 1979).

tions prohibited such performances as well as the displaying of films and pictures of them in premises licensed to serve liquor. The Court conceded that the regulations on their face would proscribe both protected speech and nonprotected, obscene conduct that had an insufficient "communicative element" to be viewed as speech. *Id.* at 116–18, 93 S.Ct. at 395–397. But the Twenty-first Amendment "strengthened" the states' existing police power in the area of liquor regulation, *id.* at 115, 93 S.Ct. at 395, and the Court could not say that California's choice of methods to alleviate the evil associated with plaintiffs' lascivious conduct was irrational, *id.* at 116, 93 S.Ct. at 395. The Twenty-first Amendment supplied California with the power to prohibit admittedly protected speech in the course of suppressing conduct that did not rise to the level of speech. However, because the state's source of power was the Twenty-first Amendment, it could ban the protected speech along with the unprotected conduct only in establishments that it had licensed to serve liquor. *Id.* at 118, 93 S.Ct. at 397. The Court held that the regulations did not on their face violate the Constitution.

Only a few years after *La Rue* the Court cast doubt on the decision in *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *Craig* involved a sex-based equal-protection challenge to a state statute that permitted females to drink 3.2% beer at age 18 but forbade it to males until they reached age 21. The Court outlined the Twenty-first Amendment's history, *id.* at 204–07, 97 S.Ct. at 460–62, and concluded that state power under the Twenty-first Amendment traditionally has prevailed over purely economic matters, such as arise in commerce clause/Twenty-first Amendment conflicts, but that

> [c]ases involving individual rights protected by the Due Process Clause have

been treated in sharp contrast. For example, when an individual objected to the mandatory "posting" of her name in retail liquor establishments and her characterization as an "excessive drink[er]," the Twenty-first Amendment was held not to qualify the scope of her due process rights. *Wisconsin v. Constantineau,* 400 U.S. 433, 436, [91 S.Ct. 507, 509,] 27 L.Ed.2d 515 (1971).

It is true that *California v. La Rue,* 409 U.S. 109, 115, [93 S.Ct. 390, 395,] 34 L.Ed.2d 342 (1972), relied upon the Twenty-first Amendment to "strengthen" the State's authority to regulate live entertainment at establishments licensed to dispense liquor, at least when the performances "partake more of gross sexuality than of communication," id., at 118, [93 S.Ct. at 397, 34 L.Ed.2d 342]. Nevertheless, the Court has never recognized sufficient "strength" in the Amendment to defeat an otherwise established claim of invidious discrimination in violation of the Equal Protection Clause. Rather, *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 178–179, [92 S.Ct. 1965, 1974,] 32 L.Ed.2d 627 (1972), establishes that state liquor regulatory schemes cannot work invidious discriminations that violate the Equal Protection Clause.

*Id.* at 207–08, 97 S.Ct. at 462. The Court determined the state's discrimination between males and females with respect to purchasing 3.2% beer to be unconstitutional "irrespective of the operation of the Twenty-first Amendment." *Id.* at 208, 97 S.Ct. at 462 (citations omitted).

It appears that "[n]either the text nor the history of the Twenty-first Amendment suggests that it qualifies individual rights protected by the Bill of Rights and the Fourteenth Amendment where the sale or use of liquor is concerned." [14] *Id.* at 206, 97 S.Ct. at 461, *quoting* P. Brest, Processes of

---

14. Put another way,

> [f]ederal laws have prevailed over state regulation of intoxicating liquors in only two circumstances: 1) where the state regulation was repugnant to overriding national concern with due process and equal protection, and 2) where the state has sought to invade an area of exclusive federal concern, such as federal-

> ly owned installations, regulation of commerce with foreign nations, and taxation of imports from foreign countries. Thus, absent a strong federal interest, the state scheme must prevail.

> *Castlewood International Corp. v. Simon,* 596 F.2d 638, 643 (5 Cir. 1979) (citations omitted).

Constitutional Decisionmaking, Cases and Materials 258 (1975). If it were not for *La Rue*, the reach of the Twenty-first Amendment would not limit the free speech rights embodied in the First Amendment. But from our understanding of *Craig*, the Supreme Court has not departed from its holding in *La Rue* that, in connection with regulation of liquor, the state may incidentally ban protected speech in conjunction with its efforts to prohibit nonprotected communications.

The *La Rue* principle may also be observed in *Die Burg, Inc. v. Underhill*, 465 F. Supp. 1176 (M.D. Fla. 1979). It is true that both *La Rue* and *Die Burg* involved conduct considered not to be speech because it was obscene. In contrast, the present case involves suppression of printed material for its content rather than for lack of content. But why communications or conduct are regarded as nonspeech—for example, because they are obscene or, as here, because they promote unlawful activity under the commercial speech doctrine—is not material to *La Rue's* holding that when regulation of liquor is at stake, constitutionally protected as well as nonprotected activity may be banned. As discussed *supra*, under the commercial speech doctrine, liquor advertising in Mississippi is either not speech at all or is protected speech only in Mississippi's "wet" counties. In either case, Mississippi has the power under the Twenty-first Amendment as construed in *La Rue* to ban protected speech, if any, as well as unprotected communications when the subject of the message is alcoholic beverages.[15]

In this situation, the inquiry for the court is whether the means the State has chosen to achieve its goal are rationally related to that purpose. *La Rue*. That Mississippi could have chosen a less restrictive means to meet its legitimate objective is immaterial. The only issue before the court is whether the means the State did choose—complete prohibition of liquor advertising—were unreasonable. *La Rue*, 409 U.S. at 116, 93 S.Ct. at 395. Recalling our discussion of Mississippi's interests in protecting its citizens and upholding the law, *see* note 11 *supra*, we cannot conclude that the State's choice of means is irrational. We therefore hold that the Twenty-first Amendment gives Mississippi the power to prohibit completely under Miss.Code Ann. § 97–31–1 *The Daily Mississippian's* advertising of liquor and other alcoholic beverages.[16]

## VI.

Included in the City of Oxford's answer to plaintiffs' amended complaint is a counterclaim for abuse of process. Plaintiffs have moved to dismiss the counterclaim for failure to state a claim upon which relief can be granted, Rule 12(b)(6), F.R.Civ.P. We consider the record outside the pleadings in ruling on this motion and therefore view it as one for summary judgment. Rule 12(b), F.R.Civ.P.

Abuse of process is "the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, and with resulting damages." *Hyde Construction Co. v. Koehring*

---

15. The Oklahoma Supreme Court has held that the Twenty-first Amendment gives states the power to forbid liquor advertisements entirely even if they disseminate concededly legal commercial speech. *Oklahoma Alcoholic Beverage Control Board v. Burris*, 612 P.2d 257 No. 52,-197 (Okla. Apr. 15, 1980). We do not construe *La Rue* so broadly.

16. Plaintiffs also argue, citing no authority, that the City's threatened enforcement of § 97–31–1 against *The Daily Mississippian* and the *Oxford Eagle* violates equal protection because the City has taken no action against newspapers published out of state but circulat-

ed within the municipal corporate limits. Taking, for the sake of argument, the controversial position that the City's prosecutorial discretion is reviewable, *see* K. Davis, Administrative Law Treatise ch. 9 (2d ed. 1979), we conclude that no violation of § 1983 has taken place because there is no showing of purposeful discrimination. *Williams v. DeKalb County*, 582 F.2d 2 (5 Cir. 1978), *citing with approval id.*, 577 F.2d 248, 257 (Clark, J., specially concurring). It is undisputed that the City took action against plaintiffs and the *Oxford Eagle* because citizens complained to City officials about beer advertisements in the local papers.

Co., 387 F.Supp. 702, 712–13 (S.D. Miss. 1974), *modified but cited with approval sub nom. Dunn v. Koehring Co.*, 546 F.2d 1193, 1199, *modified sub nom. Hyde Construction Co. v. Koehring Co.*, 551 F.2d 73 (5 Cir. 1977). The elements of the tort are:

(1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity.

*State ex rel. Foster v. Turner*, 319 So.2d 233, 236 (Miss. 1975). *Accord, State ex rel. Richardson v. Edgeworth*, 214 So. 2d 579, 586 (Miss. 1968), *citing inter alia* 1 Am. Jur. 2d *Abuse of Process* § 4 (1962). The gravamen of the tort is that a party against whom it is committed is forced to do some collateral thing outside the regular purview of the process that he would not ordinarily be required to do. 1 Am. Jur. 2d *Abuse of Process* § 4 (1962). Examples of abuse of process include attempting to enforce a judgment known to be false, fraudulent, or nonexistent, *id.* § 12, and using an arrest warrant to extort property or compel some act, *id.* § 14.

 The City pleads that plaintiffs' actions constitute an abuse of process because plaintiffs amended their complaint to allege that they wished to advertise liquor other than beer in the future. In essence, the City contends that plaintiffs made this allegation only to keep their lawsuit alive after this court dismissed the original complaint for lack of case or controversy. The City argues that plaintiffs' allegation is vexatious and frivolous because the City has repeatedly assured plaintiffs that it has no intention of interfering with their constitutional rights and never has had such an intention. Thus, concludes the City, plaintiffs have not maintained this lawsuit in good faith.

The facts of record do not agree with the City's allegations. The City's position on enforcement of Miss. Code Ann. § 97–31–1 has been at best ambiguous. As discussed *supra*, the City warned plaintiffs first through a police officer and then by letter that they should cease advertising beer and other intoxicating beverages. The letter specifically mentions liquor and cites § 97–31–1, which forbids *inter alia* the advertising of liquor. It is true that *The Daily Mississippian* has not advertised liquor in the past, but it is equally true that should it do so in the future such conduct would fall within the prohibition of § 97–31–1. The City has not unequivocally stated that it will never prosecute plaintiffs. It has merely stated that it may or may not, depending upon the result of the Southern District case. Plaintiffs' actions constitute a reasonable response to a threatening situation. No evidence in the record indicates that bad faith has motivated continuation of this lawsuit after dismissal of their original complaint.

 Even had plaintiffs maintained suit through bad faith, a claim for abuse of process would not lie. Conceding for the sake of argument that plaintiffs amended their complaint in part for the purpose of harassing the City, a threat to them by virtue of advertisements they desired to publish nonetheless remained. It is clear that when a party uses process because of an ulterior motive but nevertheless uses the process for its intended, legitimate purpose, no liability exists. *State ex rel. Foster v. Turner*, 319 So.2d 233 (Miss. 1975); 1 Am. Jur. 2d *Abuse of Process* § 13 (1962). Regardless of whatever ancillary reasons plaintiffs had for continuing this lawsuit, the legitimate purpose remains. We therefore grant plaintiffs summary judgment on the City's counterclaim for abuse of process.[17]

Let judgment be entered accordingly.

---

17. In response to plaintiffs' memorandum of law, the City insists that its counterclaim is for abuse of process rather than malicious prosecution. The difference between the two is that malicious prosecution concerns "maliciously causing process to issue," while abuse of process concerns "the improper use of process after it has been issued." *Turner*, 319 So.2d at 236.

To the extent that the City pleads an action for malicious prosecution as well as abuse of proc-ess, we grant plaintiffs summary judgment for the reasons stated in text.