**Michael WOODS et al., Plaintiffs,**

v.

**The ALCOHOLIC BEVERAGE APPEALS BOARD et al., Defendants.**

**No. CV 80–4688–AWT.**

United States District Court, C. D. California.

Dec. 4, 1980.

Stephen Warren Solomon, Inc., Ralph Saltsman, Inc., Marina del Rey, Cal., for plaintiffs.

George Duekmejian, Atty. Gen., Scott David Rasmussen, Deputy Atty. Gen., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

TASHIMA, District Judge.

This is an action for injunctive and declaratory relief under 42 U.S.C. § 1983.

Plaintiffs' general on–sale liquor license was suspended by defendant, the Department of Alcoholic Beverage Control of the State of California (the "ABC"), for a 45–day period for violation of the ABC's live entertainment regulation. 4 Cal.Adm.Code § 143.3. Plaintiffs' application for a temporary restraining order was denied and, pursuant to Rule 65(a)(2), Fed.R.Civ.P., the application for a preliminary injunction was consolidated with the trial of the action on the merits. The action was tried on November 14, 1980, on stipulated facts.

Prior to the commencement of the license suspension period, plaintiffs petitioned the ABC to consider allowing them to pay a sum of money in lieu of serving the suspension. Such a procedure is authorized by

Cal.Bus. & Prof.Code § 23095[1] for suspensions of 30 days or less. The ABC refused to consider this request on the ground that the statute, by its express terms, applied only to suspensions of 30 days or less. The 45–day suspension of plaintiffs' license became effective on October 23, 1980.

■ Plaintiffs contend that the refusal to consider an offer of compromise under Section 23095 violated their rights to due process and equal protection of the laws under the Fourteenth Amendment.

For the reasons stated below, we disagree.

■ Plaintiffs do not challenge here the validity of the ABC's decision to suspend their license or the length of the suspension, which was made pursuant to a hearing. That decision was appealed to and affirmed by the ABC Appeals Board and plaintiffs' petitions for writs of review to the state appellate courts were denied. That decision has become final.[2] They assert, however, that Section 23095 itself and the ABC's refusal to consider their offer of compromise thereunder are tantamount to a conclusive presumption that permitting a licensee upon whom a suspension of more than 30 days has been imposed to continue operating is contrary to the public welfare and morals. It is contended that such a conclusive presumption is unsupported by any evidence and, therefore, is arbitrary and irrational.

■ An analysis of the challenged statute must commence with a recognition that the Twenty–First Amendment confers upon the states "something more than the normal state authority over public health, welfare, and morals." *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972). The states' interest in regulating the distribution and consumption of liquor within its borders is particularly protected. While it is true that the Twenty–First Amendment does not supersede all other provisions of the Constitution, *see, e. g., Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the other provisions must be considered in light of the interests that the amendment en-

1. Section 23095 provides, in pertinent part:
    (a) Whenever a decision of the department suspending a license for 30 days or less becomes final, whether by failure of the licensee to appeal the decision or by exhaustion of all appeals and judicial review, the licensee may, before the operative date of such suspension, petition the department for permission to make an offer in compromise, to be paid into the Alcohol Beverage Control Fund, consisting of a sum of money in lieu of serving such suspension. Upon the receipt of such a petition, the department may stay the proposed suspension and cause such investigation to be made as it deems desirable and may grant such petition if it is satisfied (a) that the public welfare and morals would not be impaired by permitting the licensee to operate during the period set for suspension and that the payment of the sum of money will achieve the desired disciplinary purposes; (b) that the books and records of the licensee are kept in such a manner that the loss of sales of alcoholic beverages which the licensee would have suffered had such suspension gone into effect can be determined with reasonable accuracy therefrom. Such offer in compromise shall be the equivalent of 20 percent of the estimated gross sales of alcoholic beverages for each day of such proposed suspension, and such offer in compromise shall be not less than two hundred fifty

    dollars ($250) nor more than two thousand dollars ($2000).

2. For this reason, *i. e.*, that no state administrative or judicial proceeding is pending, we conclude that abstention is not required in this case. Defendants urge that the doctrine of comity, articulated in *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires this court to abstain from considering plaintiffs' challenge to § 23095. Unlike *Huffman* and *Younger*, however, there is no state court proceeding pending in the present case. Nor are plaintiffs attacking the propriety of the ABC's ruling suspending their license. Cf. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (dismissing a challenge to an order of the Texas Railroad Commission, on the grounds that adequate review could be had in the state court and that a lower federal court's consideration of the propriety of the Commission's order would amount to an improper intervention in the state's domestic policy). Plaintiffs here are challenging the constitutionality of § 23095 on its face and as applied (or, in this case, not applied) by the state agency. This court is not required by *Younger* or its progeny to abstain in these circumstances.

titles the states to protect. *California v. LaRue, supra,* 409 U.S. at 115, 93 S.Ct. at 395. *Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964).

■ In this circumstance, plaintiffs' claim that they were denied their right to substantive due process by the California statute and the "irrebuttable presumption" it allegedly creates is without merit. The Supreme Court has consistently refused to strike down state statutes regulating business that are not completely unreasonable. *See, e. g., New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. 96, 106–107, 99 S.Ct. 403, 410, 58 L.Ed.2d 361 (1978); *California v. LaRue, supra; Williamson v. Lee Optical Co.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). The statute in question clearly meets this "rational basis" test. It is not unreasonable for the California Legislature to have concluded that a violation requiring a license suspension of more than 30 days is serious enough to also require that the suspension actually be served. Under California's statutory scheme, the question of the consequence which would result from the licensee's continued operation is considered by the ABC at the initial hearing when it decides whether a suspension should be ordered and, if so, for how long. Cal.Bus. & Prof. Code § 24200, *et seq.*

The irrebuttable presumption cases cited by plaintiffs, *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), are clearly distinguishable.[3] Each, unlike the case at bench, involved a presumption that lacked the required rational basis. Moreover, the rights infringed upon by the challenged presumption in each of these cases were more fundamental than the right involved here, in light of the Twenty–First Amendment.

■ In deciding whether the statutory procedure is inadequate and, thus, whether a second hearing is required for everyone whose license is suspended, we must consider the nature of plaintiffs' protectible property interest. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In doing so, however, we must distinguish between plaintiffs' interest in the license itself, and the right to a separate determination of whether the suspension of that license should be stayed. The due process right arising from the first interest was satisfied by the administrative and judicial review that the plaintiffs have already received. The latter right is based upon a distinct statute, that the Legislature had no duty to enact, allowing for continued operation, notwithstanding an order of suspension after a hearing. The Legislature could and did decide to limit the scope of this additional privilege to a particular class of violators. *Id.* at 577–78, 92 S.Ct. at 2709.

The claim made by plaintiffs here is similar in this sense to the one made in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). *Greenholtz* involved a challenge to the Nebraska procedure for determining parole releases. The Board's practice had been to hold an initial informal review, at which it would interview the prisoner and examine any statements or letters the prisoner offered on his own behalf. If the Board decided that the inmate was not a good candidate for release, it could deny parole without holding a formal hearing. *Id.* at 4, 99 S.Ct. 2102. The Court held that this procedure did not violate the inmates' due process rights, since the state had no duty to grant parole. The Court distinguished parole determination from parole revocation, in that one involved the deprivation of a liberty already

---

**3.** *Vlandis* involved a conclusive presumption of non–residence for the purpose of deciding what tuition rate would be paid by certain students; the *LaFleur* case concerned a conclusive presumption that a teacher who reaches the fifth or sixth month of pregnancy is incapable of continuing; while *Stanley* was a challenge to a presumption that unmarried fathers are unsuitable and neglectful parents.

held, while the other involved denial of a desired conditional liberty. *Id.* at 9, 99 S.Ct. 2104. The Court in *Greenholtz* also held that the first informal hearing afforded each inmate the opportunity to introduce sufficient favorable evidence on his own behalf. A similar opportunity to introduce favorable evidence was afforded to plaintiffs here at the time of the first hearing when the suspension was imposed.

Finally, we reject plaintiffs' argument that the distinction drawn by the statute between 30–day offenders and 31–day offenders is arbitrary and irrational and, thus, in violation of their right to equal protection of the laws. The Supreme Court has clearly held that statutory discrimination will not be set aside if any reasonably conceived set of facts justifies the classification and if no suspect classification is involved. The fact that there is an unequal distinction made between classifications is not *per se* invidious and, therefore, unconstitutional. All that is required is that persons similarly situated be treated equally, and that the classification "rest on grounds [not] wholly irrelevant to the achievement of the state objective." *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71, 99 S.Ct. 383, 390, 58 L.Ed.2d 292 (1978); *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961); *State Board of Tax Commissioners v. Jackson,* 283 U.S. 527, 542, 51 S.Ct. 540, 545, 75 L.Ed. 1248 (1931). The 30–31 day distinction challenged by plaintiffs clearly bears a rational relationship to the purpose of the alcoholic beverage control laws.

For the foregoing reasons, judgment shall be entered for defendants. This memorandum opinion shall serve as the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P., Rule 52(a).