**LAMAR OUTDOOR ADVERTISING, INC. et al.**

v.

**MISSISSIPPI STATE TAX COMMISSION, et al.**

Civ. A. No. J78–0472(R).

United States District Court, S. D. Mississippi, Jackson Division.

Feb. 8, 1982.

---

James K. Child, Henry E. Chatham, Jackson, Miss., Jack Pittman, Hattiesburg, Miss., for plaintiffs.

Bill Allain, Atty. Gen., Peter Stockett, Jr., Asst. Atty. Gen., W. Timothy Jones, John E. Milner, Jackson, Miss., for defendants.

## OPINION

**DAN M. RUSSELL, Jr., Chief Judge.**

Fifty-six media Plaintiffs [1] have invoked the jurisdiction of this Court pursuant to 28 U.S.C. Sections 1331, 1343 and 42 U.S.C. Section 1983 in this non-class action suit in order to challenge the constitutionality of the Mississippi statutes and the regulations of the Alcoholic Beverage Control Division (hereinafter "ABC Division") of the Mississippi State Tax Commission [2] which control and effectively prohibit the advertisement of alcoholic beverages [3] in this state. Specifically, Plaintiffs contend that: (1) the challenged statutes and regulations and their enforcement violate First Amendment

1. Plaintiffs may be grouped as outdoor advertising plaintiffs, newspaper and electronic media plaintiffs: outdoor advertising plaintiffs include: Lamar Outdoor Advertising, Inc.; Outdoor Communications, Inc.; and Classic Advertising, Inc. which are Mississippi corporations. Plaintiff National Advertising Company is a Delaware corporation authorized to do business in Mississippi. Plaintiff Walter C. Vick is an individual doing business as Mississippi Outdoor Advertising, a sole proprietorship. Each of these outdoor advertising plaintiffs is a bonded and duly authorized outdoor advertiser, regulated by the Mississippi State Highway Commission under Miss.Code Ann. Sections 49–23–1 *et seq.* (1972). Their business consists of selling advertising space on outdoor signs and billboards which are established and maintained in conformity with the Highway Beautification Act of 1965 (23 U.S.C. Section 131) and under the requirements of Miss.Code Ann. Sections 49–23–1 *et seq.* (1972). (Joint Pre-Trial Order Section 3, par. 1, at 7, Ex. G–1).

    Newspaper plaintiffs include: Mississippi Press Register, Inc.; Natchez Newspapers, Inc.; Grenada Newspapers, Inc.; Commonwealth Publishing, Inc.; Delta-Democratic Publishing Co.: Bolivar Newspapers, Inc. and Capital Reporter Publishing Company, Inc. which are Mississippi corporations. The newspaper plaintiffs publish and distribute daily and weekly newspapers in Mississippi, and a substantial portion of their gross revenues is derived from the sale of advertising space in the newspapers.

    Electronic media plaintiffs include: Service Broadcasters, Inc.; Lee Broadcasting Company; Rebel Broadcasting Company of Mississippi; New South Communications, Inc.; New South Broadcasting Corporation; Fritts Broadcasting, Inc.; Deep South Radio, Inc.; New Laurel Radio Station, Inc.; Television America Sixteen, Inc.; Bob McRaney Enterprises, Inc.; Gateway Broadcasting, Inc.; First Natchez Corporation; Air Enterprises, Inc.; Southeast Mississippi Broadcasting Company; Southland, Inc.; Voice of the New South, Inc.; P.T.C., Inc.; WGUF, Inc.; Haddox Enterprises, Inc.; Broadcasters and Publishers, Inc.; WGUD Stereo, Inc.; Central Television, Inc.; Communications Improvements, Inc.; Gulf Coast Broadcasting Company; Radio Hattiesburg, Inc.; Charisma Broadcasting Company; Broadcast Associates, Inc.; Southern Electronics Company, Inc.; Tung Broadcasting Company; Town and Country Broadcasting Company, Inc.; Martin Broad-

casting Company; Starkville Broadcasting Company; WJDX, Inc. (hereinafter referred to collectively as the "Electronic Media Plaintiffs"), which are Mississippi corporations except for plaintiffs, Tri-Cities Broadcasting Company and WJDX, Inc., which are, respectively, a Texas corporation and a Delaware corporation, both authorized to do business in Mississippi, and plaintiffs, Starkville Broadcasting Company and Southeast Mississippi Broadcasting Company, which are Mississippi partnerships. Each of the electronic media plaintiffs are licensees of the Federal Communications Commission.

2. The Mississippi State Tax Commission, defendant herein, is an administrative agency of the State of Mississippi, established by and existing under and by virtue of Miss.Code Ann. Sections 27–3–1 *et seq.* The ABC Division of the Mississippi State Tax Commission was established by and is existing under and by virtue of Section 67–1–19. Defendants A.C. Lambert, Sr., Robert A. Baggett, and Latrelle Ashley are members of the Mississippi State Tax Commission (Ex. G–1 at 9–10). The Mississippi State Tax Commission, its ABC Division, and the members of the Commission are charged with the responsibility of administering and enforcing the provisions of the Local Option Law, Sections 67–1–1 *et seq.* (Ex. G–1 at 10), enacted by the Mississippi Legislature in 1966 (Laws, 1966, Ch. 540) upon possible penalty of forfeiture of office under Section 67–1–91. Sections 67–1–37(e), 67–1–85, 67–1–87, and Regulations 1, 6, and 36 of the ABC Division of the State Tax Commission are part of this Local Option Law.

    Former defendant, A. F. Summer was, until January 16, 1980, the Attorney General of the State of Mississippi and, as such, was charged with the responsibility of prosecuting all suits, civil or criminal, in which the State of Mississippi is interested. Since January 16, 1980, defendant Bill Allain has been the Attorney General of the State of Mississippi. Defendant Allain is, and Summer was, specifically responsible for enforcing two of the challenged statutes: Sections 67–1–85 and 97–31–1. (Ex. G–1 at 10).

3. "Alcoholic beverages" in this action refers to distilled spirits and wine. Beer is excluded.

guarantees of freedom of speech and press and Article 3, Section 13 of the Mississippi Constitution of 1890; (2) the challenged statutes and regulations and their enforcement deprive Plaintiffs of property without due process of law in violation of the due process clause of the Fourteenth Amendment and Article 3, Section 14 of the Mississippi Constitution of 1890; and (3) the challenged statutes and regulations and their enforcement deny Plaintiffs equal protection of the law in violation of the equal protection clause of the Fourteenth Amendment. To prevent further violation of their civil rights, Plaintiffs seek: (1) a declaratory judgment pursuant to 28 U.S.C. Sections 2201 and 2202 that the challenged laws are unconstitutional; (2) a prohibitory injunction enjoining defendants from attempting to enforce the challenged laws; (3) alternatively, a mandatory injunction requiring the defendants to enforce the challenged laws against any and all advertisers who advertise alcoholic beverages within Mississippi; (4) court costs; and (5) attorney's fees pursuant to 42 U.S.C. Section 1988.

Following discovery by both sides and extensive pre-trial proceedings before this Court, this action was tried before the Court without a jury on March 11–12, 1981. Having heard and considered the oral and documentary evidence presented by the parties, the Court hereby makes its Findings of Fact and Conclusions of Law as required by Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. The Mississippi statutes and regulations which are challenged as unconstitutional in this action are as follows:

*Miss.Code Ann. Section 67–1–85 (1972)* effectively prohibits outdoor advertising of alcoholic beverages within Mississippi by proclaiming it "unlawful to advertise alcoholic beverages by means of signs, billboards, or displays on or along any road, highway, street, or building."

*Miss.Code Ann. Section 67–1–87 (1972)*, the general provision, provides that violations of Section 67–1–85 are punishable as a misdemeanor by a fine of not more than one thousand dollars ($1,000.00) and/or imprisonment for not more than six months.

*Miss.Code Ann. Section 67–1–37(e) (Supp. 1980)* empowers the State Tax Commission "(t)o issue rules prohibiting the advertising of alcoholic beverages in the state *in any class of media* and to provide further that all advertising of the retail price of alcoholic beverages shall be prohibited except on placards or signs in the interior of licensed premises which are not visible from the exterior." (emphasis added).

*Miss.Code Ann. Section 97–31–1 (1972)* provides in pertinent part:

It shall be unlawful for any person, firm, corporation or association, or any servant, official or employee thereof, (1) to advertise upon any street car, railroad car, or other vehicle of transportation, or at any public place or resort, or upon any sign or billboard, or by circulars, poster, price lists, newspapers, periodicals, or otherwise, within this state, alcoholic, intoxicating or spirituous liquors, or intoxicating bitters or other drinks which if drunk to excess, will produce intoxication, including among others, brandy, whiskey, rum, gin, ale and porter, or to advertise the manufacture, sale, keeping for sale or furnishing of any of them, or the person from whom, or the firm or corporation from which, or the place where, or the method by which same, or any of them, may be obtained; (2) to circulate, publish, sell, offer for sale, or expose for sale, any newspaper, periodical, or other written printed matter in which any advertisement specified in this section shall appear, or to permit any sign or billboard containing such advertisement to remain upon one's premises; or (3) to circulate any price list, order blanks, or other matter, for the purpose of inducing or securing orders for said liquors, bitters, and drinks, or any of them hereinbefore mentioned, no matter where located...

Violations of Section 97–31–1 are considered to be criminal offenses and public nuisances which are subject to injunctive relief.

*Regulation 6* of the Alcoholic Beverage Control Division of the Mississippi State Tax Commission states that

(n)o person, firm or corporation shall originate advertisement in this State, dealing with alcoholic beverages by any means whatsoever, including but not limited to newspapers, radio, television, circular, dodger, word of mouth, signs, billboards, displays or any other advertising media . . .

*Regulation 1* of the ABC Division precludes violators of Alcoholic Beverage Control Law from obtaining permits pursuant to Miss.Code Ann. Section 67–1–57 (1972) for a period of twelve months following the violation.

*Regulation 36* of the ABC Division provides that the Mississippi State Tax Commission may, in its discretion, "delist" any size or brand of alcoholic beverages regardless of sales volume when, in its opinion, the "best interest of the Alcoholic Beverage Control Division may be served."

2. Mississippi enacted the "Local Option Alcoholic Beverage Control Law," Miss. Code Ann. Section 67–1–1 *et seq.*, in 1966 to reannounce the state's policy "in favor of prohibition of the manufacture, sale, distribution, possession and transportation of intoxicating liquors" and to express its intent to

vigorously enforce the prohibition laws throughout the state, except in those counties voting themselves out from under the prohibition law in accordance with the provisions of this chapter, and, in those counties, to require strict regulation and supervision of the manufacture, sale, distribution, possession and trans-

portation of intoxicating liquor under a system of state licensing of manufacturers, wholesalers, and retailers, which licenses shall be subject to revocation for violations of this chapter. Miss.Code Ann. Section 67–1–3.

3. The Local Option Law permits a county, or a judicial district within a county, to bring itself out from under the state-wide prohibition by a majority vote of the electors within the county or judicial district. Miss.Code Ann. Section 67–1–11—15. If the county or judicial district vote rejects coming out from under prohibition, or if an election is not held, the state-wide prohibition law remains in effect in that area. If a county or judicial district votes itself out from under the state-wide prohibition, then, subject to all of the "provisions and restrictions" of the Local Option Law, the "possession and transportation" of alcoholic beverages is legal throughout the county or judicial district while the "manufacture, sale and distribution" of alcoholic beverages is lawful only in incorporated municipalities, qualified resort areas and clubs within the county or judicial district. Miss.Code Ann. Section 67–1–7 (Supp.1980).

4. At the time of trial in this matter, of eighty-two counties in Mississippi, forty-three counties and four judicial districts in four other counties had exercised their option to legalize the possession, transportation, manufacture, sale and distribution of alcoholic beverages to the extent permitted by the Local Option Law.[4] Thirty-five counties and four judicial districts in four other counties had chosen not to exercise their option under the Local Option Law.[5]

---

**4.** Those counties include: Adams, Alcorn, Amite, Bolivar, Carroll, Chickasaw-Second Judicial District, Claiborne, Clay, Coahoma, Copiah, DeSoto, Forrest, Hancock, Harrison, Hinds-First Judicial District, Holmes, Humphreys, Issaquena, Jackson, Jasper-First Judicial District, Jefferson, Jefferson Davis, Jones-Second Judicial District, Kemper, Lafayette, Lauderdale, Lee, Leflore, Lowndes, Madison, Marion, Marshall, Oktibbeha, Panola, Perry, Pike, Quitman, Sharkey, Sunflower, Tallahatchie, Tunica, Warren, Washington, Wayne, Wilkinson, Yalobusha, and Yazoo. (Ex. D–5).

**5.** Those counties include: Attala, Benton, Calhoun, Chickasaw-First Judicial District, Choctaw, Clarke, Covington, Franklin, George, Greene, Grenada, Hinds-Second Judicial District, Itawamba, Jasper-Second Judicial District, Jones-First Judicial District, Lamar, Lawrence, Leake, Lincoln, Monroe, Montgomery, Neshoba, Newton, Noxubee, Pearl River, Pontotoc, Prentiss, Rankin, Scott, Simpson, Smith, Stone, Tate, Tippah, Tishomingo, Union, Walthall, Webster, and Winston. (Ex. D–5).

5. According to the testimony of the Director of the State Alcohol Beverage Control Division of the State Tax Commission, the vast majority of Mississippi's population reside in those counties which have elected to renounce the state's policy of prohibition.

6. Enforcement of the Alcoholic Beverage Control Law is the responsibility of the Mississippi State Tax Commission Alcoholic Beverage Control Division and the members thereof under penalty of possible forfeiture of office. Miss.Code Ann. Section 67–1–85, –91 (1972). The Attorney General of the State of Mississippi[6] is also responsible for enforcing Miss.Code Ann. 67–1–85 which prohibits the advertisement of alcoholic beverages on outdoor signs and Section 97–31–1 which prohibits alcoholic beverage advertisement in newspapers and on billboards.

7. Regulation No. 6 is Defendants' primary legal basis for effectuating their interest in controlling alcoholic beverage advertising in this state. Regulation No. 6 provides in pertinent part that "(n)o person, firm or or corporation shall *originate* advertisement in this state, dealing with alcoholic beverages . . ." (emphasis added). The policy of the State Tax Commission is not to enforce Regulation No. 6 and the other challenged statutes and regulations against any "person, firm or corporation" which does not "originate advertisements" of alcoholic beverages in this State, due to an absence of jurisdiction. The State Tax Commission has interpreted "originate advertisement in this State" to mean that the central place of publication or dissemination of alcoholic beverage advertisements must be within the physical boundaries of the state in order for the challenged statutes and regulations to apply.[7]

8. The State contends its interest is regulating and effectively prohibiting the Plaintiffs from advertising alcoholic beverages is to protect the health, safety, and general welfare of the citizens of this state by controlling the artificial stimulation of the sale and consumption of alcoholic beverages. According to Defendant's expert, Dr. Marc Hertzman, Director of Hospital Services in the Department of Psychiatry and Social Sciences at the George Washington University Medical Center, this interest is substantiated by the considerable physiological and psychological effects alcohol consumption has on the human body. Alcohol consumption reportedly increases the incidences of mortality due to coronary heart disease, gastrointestinal cancer, cirrhosis of the liver and traffic accidents. Psychological effects of alcohol consumption reveal heightened depression, loss of self-esteem and familial and occupational difficulties. Dr. Hertzman recognizes the existence of a strong correlation between an increase in alcohol advertising and consumption. Further he concludes that alcoholic beverage advertising will induce those who do not drink to partake and encourage those who do drink to imbibe more.

9. Plaintiff's expert, Dr. David Pittman, Chairman and Professor of Sociology at Washington University, specializing in alcoholism and alcoholic abuse,[8] states that no credible scientific evidence exists to support Defendant's theory that increased alcoholic

6. See note 2 *supra.*

7. This interpretation of Regulation No. 6 stems partially from two 1967 opinions of the Attorney General of the State of Mississippi pursuant to Miss.Code Ann. Section 7–5–25 (Supp. 1980), and its predecessor, Section 3834 (1942) which directs the Attorney General to issue his written opinion on an issue when requested by certain state or local officials. Essentially, these opinions stated that Mississippi has no control over publications printed and mailed outside the state which are distributed within the state. (Ex. D–7, D–8) Defendants also do not attempt to monitor or control commercial television and radio stations physically located outside the state which transmit wine commercials into the state. Defendants do enforce the challenged statutes and regulations against television and radio stations within Mississippi.

8. Dr. Pittman has done considerable research in the field of alcohol abuse. He has published numerous works concerning the effects of alcohol advertisements on consumption including *Alcoholism and Advertising* and "The Effects of Alcohol Beverage Ads, Practices and Messages on Alcohol Problems and Alcoholism in the United States."

beverage advertising leads to increased consumption. Moreover, it is this expert's opinion that the state's statutory ban on alcohol advertising does little to advance their interest in promoting temperance because of the constant and significant influx of alcohol advertisements into this state from magazines, newspapers, television and radio stations outside the state which permit advertisement of alcoholic beverages. Dr. Pittman maintains that more feasible methods exist for the treatment of alcoholism and for the promotion of temperance such as alcohol prevention programs targeted at certain groups.

10. Dr. Pittman contends that the alcohol advertisements themselves are intended to depict a major theme such as tradition, excellence or quality in order to enhance name-brand identification with the particular product. Furthermore, this expert concludes that the major function of advertising is to obtain an increase in the market share rather than to artificially stimulate alcohol consumption.

11. The evidence presented by Plaintiffs consisted of the testimony of numerous newspaper editors and publishers, managers of radio and television stations and outdoor advertisers in this state regarding not only the tremendous financial loss they suffer as a result of the ban, but also the actual physical impossibility they encounter in attempting to effectuate a total alcoholic beverage advertisement ban in Mississippi where its citizens subscribe to an unlimited number of national and out of state news-papers, magazines, and radio and television broadcasts displaying alcohol advertisements.[9] Radio and television station managers described the difficulty they have monitoring programs to delete wine and beer commercials broadcast over the networks.[10] Newspaper publishers cited numerous instances where the same family in Mississippi will receive an in-state, local newspaper without liquor advertisements and also the New Orleans *Times-Picayune*, the Memphis *Commercial Appeal*, the *Mobile Press* or the *Mobile Register*, or the *Wall Street Journal* which are replete with alcohol advertisements. Plaintiffs also introduced in evidence a poster published by the Tourism Department of the Mississippi Agriculture and Industry Board featuring a mint julep designed to attract potential tourists to Mississippi. Indeed, this Court discovered a billboard eleven miles north of Hattiesburg in the southbound lane of Mississippi Highway 49 advertising for Ramada Inn motels. The advertisement bore a cocktail glass to signify the existence of a lounge. According to L. R. Mashburn, Chief of Enforcement of the ABC Division of the State Tax Commission since 1966, Ramada Inn had previously been requested to remove a similar sign found in the state because it was deemed to be in violation of the ban against liquor advertisement.

## CONCLUSIONS OF LAW

The issue presented to the Court concerns whether the free speech clause of the First Amendment [11] prevents a state from forbid-

9. Plaintiffs introduced into evidence not only a three page list of magazines found in the Jackson, Mississippi public library containing liquor advertisements, but also over fifteen actual ads taken from magazines ranging from *Field & Stream* to *Better Homes & Gardens* and *TV Guide*.

10. The National Association of Broadcasters Television Code, Advertising Standards, Section IV, 7(A) denies radio and television operators the privilege of advertising liquor. Only wine and beer commercials are permitted when presented tastefully.

11. *Compare Williams v. Spencer*, 662 F.2d 1200, 1205 (4th Cir. 1980) (judicial notice was taken of the fact that advertisements encourag-ing the use of drugs encourages the use thereof); *Dunagin v. City of Oxford*, 489 F.Supp. 763, 771 and n. 11 (N.D.Miss.1980), *appeal pending*, No. 80–2762 (5th Cir. 1981) (court determined that it was "medically known" that alcohol is dangerous; that a wider availability of alcohol leads to higher rates of alcoholism and mortality; that the purpose of advertising alcoholic beverages is to promote consumption and to stimulate sales; and that increased sales of these beverages are highly correlated with increased problems associated with their use.) *with High Ol' Times, Inc. v. Busbee*, 456 F.Supp. 1035, 1040–41 (N.D.Ga.1978), *aff'd*, 621 F.2d 141 (5th Cir. 1980) (per curiam) (drug-related material is protected by the First Amend-

ding the advertisement of alcoholic beverages and whether the Twenty-First Amendment empowers the State to ban alcohol advertisements regardless of any First Amendment protection.[12] Secondly, Plaintiffs request that this Court consider their equal protection and due process claims in light of the Twenty-First Amendment.

The Twenty-First Amendment, enacted after fourteen years of unsuccessful enforcement of the Eighteenth Amendment and national prohibition, effectively repealed prohibition and placed the power to control liquor regulation in the states. Specifically, the amendment provided that "(t)he transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." It is unclear from the language of this provision whether a state's power to control alcohol is limited solely to transportation and importation as-

pects of commerce or whether it extends beyond those areas to all measures affecting commerce. More important, however, is the question of the degree of exclusive power allowed to the states free of federal restraint.

■ In 1972, the United States Supreme Court in *California v. LaRue*, 409 U.S. 109, 116, 93 S.Ct. 390, 396, 34 L.Ed.2d 342 (1972), first addressed the effect of the Twenty-First Amendment on forms of expression protected by the First Amendment. The Court determined that the proper analytical framework to be invoked when questioning the authority of a state to enact a statute regulating alcohol is one of presumed state power because of the express grant of authority vested in the states, pursuant to the Twenty-First Amendment, to regulate the importation, distribution and consumption of alcohol.[13] Early cases decided by the

ment regardless of its aberrant, unpopular, and even revolutionary subject matter) *and Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (a state may not completely suppress the dissemination of truthful information about an entirely lawful activity merely because it is fearful of that information's effect upon its disseminators and its recipients). Although this court cannot disagree with the conclusions reached by Mississippi's Northern District Court, nor can it in good faith agree wholeheartedly with the conclusions reached by that court on a motion for summary judgment attacking Miss.Code Ann. Section 97–31–1 (1972) which prohibits liquor advertisements in newspapers. This Court, on the other hand, heard expert testimony on the subject of alcoholic advertising, the state's complete statutory and regulatory ban of such advertisements and the correlation between such advertisements and an increased consumption of alcohol.

12. The issue before this Court is the precise question confronted by Judge William Keady in *Dunagin v. City of Oxford*, 489 F.Supp. 763, 765 (N.D.Miss.1980), *appeal pending*, No. 80–2762 (5th Cir. 1981) wherein that court held that because alcohol advertisements promoted activity illegal in a substantial portion of Mississippi, then the State, pursuant to the broad powers invested in it under the Twenty-First Amendment, could regulate advertising even to the·point of an absolute ban. The court relied upon *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) and *Virginia State Board of Pharmacy v. Virginia Citizens Con-*

*sumer Council*, 425 U.S. 748, 773, 96 S.Ct. 1817, 1831, 48 L.Ed.2d 346 (1976) to support its conclusion that the resolution of the case depended upon whether the advertisement of alcohol promoted an "entirely unlawful" activity subject to absolute suppression. *See also* note 11 *supra.*

13. *See also, New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *California Retail Liquor Dealers Association v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Craig v. Boren*, 429 U.S. 190, 205, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648 (1975); *Seagram & Sons v. Hostetter*, 384 U.S. 35, 41, 86 S.Ct. 1254, 1258, 16 L.Ed.2d 336 (1966); *Castlewood International Corp. v. Miller*, 626 F.2d 1200 (5th Cir. 1980); *Blatnik Co. v. Ketola*, 587 F.2d 379, 381–82 (8th Cir. 1978); *Richter v. Department of Alcoholic Beverage Control*, 559 F.2d 1168, 1170 (9th Cir. 1977), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978); *Woods v. Alcoholic Beverage Appeals Board*, 502 F.Supp. 528, 530 (C.D.Cal.1980); *Dunagin v. City of Oxford*, 489 F.Supp. 763, 772 (N.D. Miss.1980), *appeal pending*, No. 80–2762 (5th Cir. 1981); *DieBurg, Inc. v. Underhill*, 465 F.Supp. 1176, 1177 (M.D.Fla.1979); *Felix v. Milliken*, 463 F.Supp. 1360, 1375 (E.D.Mich. 1978).

Supreme Court followed an absolutist position of deference to state liquor control.[14] However, in more recent decisions, the reach of the Twenty-First Amendment has been found to be finite, despite the substantial discretion retained by the states in regulating alcohol.[15] State regulations enacted pursuant to Twenty-First Amendment powers are presumed valid as long as the regulation is reasonable and is rationally related to the furtherance of legitimate state interests.[16] Moreover, the Court's decisions have confirmed that the "Amendment primarily created an exception to the normal operation of the Commerce Clause ..." so that once a court has "pass(ed) beyond consideration of the Commerce Clause, the relevance of the Twenty-First Amendment to other constitutional provisions become increasingly doubtful."[17] However, the 1980 case of *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 108–110, 100 S.Ct. 937, 945–946, 63 L.Ed.2d 233 (1980), detracts from this position, holding that the Twenty-First Amendment does not prevent operation of the Sherman Antitrust Act, even though the Act was adopted under the commerce power of Congress.

Justice Powell, delivering the majority opinion, traced the judicial history of a state's regulatory power under the amendment but concluded that constitutional interests of the Federal government, particularly the Commerce Clause, are not abolished in the face of state liquor regulations.

These decisions demonstrate that there is no bright line between Federal and State powers over liquor. The Twenty-First Amendment grants the states virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. Although States retain substantial discretion to establish other liquor regulations, those controls may be subject to the Federal commerce power in appropriate situations. The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a concrete case.

445 U.S. at 110, 100 S.Ct. at 946 (citing *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964). The Court concluded that the federal interest in a competitive

14. *See The Licenses Cases* 5 How. 504, 579, 12 L.Ed. 256 (1847) (recognizing broad powers of state government to regulate alcohol within their borders); *Joseph S. Finch & Co. v. McKittrick*, 305 U.S. 395, 59 S.Ct. 256, 83 L.Ed. 246 (1939) (sustaining a statute prohibiting liquor importation from states which discriminated against local alcohol); *Indianapolis Brewing Co. v. Liquor Control Comm'n*, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243 (1939) (upholding a retaliatory statute similar to that in *McKittrick*); *Mahoney v. Joseph Triner Corp.*, 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424 (1938) (upholding a statute forbidding alcohol importation without a registered trade name). *But see, Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 139, 60 S.Ct. 163, 167, 84 L.Ed. 128 (1939) (upholding Kentucky liquor regulations on the grounds of state police powers rather than heightened authority under the Twenty-First Amendment).

15. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Craig v. Boren*, 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976); *Castlewood International Corp. v. Miller*, 626 F.2d 1200, 1200 (5th Cir. 1980); *Dunagin v. City of Oxford*, 489 F.Supp. 763, 772 (N.D.Miss.1980), *appeal pending*, No. 80–2762 (5th Cir. 1981).

16. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Blatnik Co. v. Ketola*, 587 F.2d 379, 382 (8th Cir. 1978); *Richter v. Dept. of Alcoholic Beverage Control*, 559 F.2d 1168, 1170 (9th Cir. 1977), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978); *Woods v. Alcoholic Beverage Appeals Board*, 502 F.Supp. 528, 531 (C.D.Calif.1980); *Dunagin v. City of Oxford*, 489 F.Supp. 763, 774 (N.D. Miss.1980), *appeal pending*, No. 80–2762 (5th Cir. 1981); *DieBurg, Inc., v. Underhill*, 465 F.Supp. 1176, 1177 (M.D.Fla.1979); *Felix v. Milliken*, 463 F.Supp. 1360, 1377 (E.D.Mich. 1978).

17. *Craig v. Boren*, 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976). *See also, Blatnik, Inc. v. Ketola*, 587 F.2d 379, 381 (8th Cir. 1978); *Richter v. Dept. of Alcoholic Beverage Control*, 559 F.2d 1168, 1171 (9th Cir. 1977), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978); *Woods v. Alcoholic Beverage Appeals Board*, 502 F.Supp. 528, 530 (C.D.Calif.1980); *Dunagin v. City of Oxford*, 489 F.Supp. 763, 772 (N.D.Miss.1980), *appeal pending*, No. 80–2762 (5th Cir. 1981).

economy outweighed the unsubstantiated state interest in promoting temperance and the protection of small retailers through resale price maintenance. Accordingly, each constitutional provision must be read with the other in mind, and their application is necessarily dependent upon "the issues and interests at stake in any concrete case." [18]

In *California v. LaRue*, 409 U.S. 109, 110, 93 S.Ct. 390, 393, 34 L.Ed.2d 342 (1972), the Supreme Court upheld a state liquor regulation which prohibited lewd sexual performances in establishment licensed by the state to serve liquor-by-the-drink. The Court found the state regulation to be a reasonable and rational exercise of its powers to preserve the health and morality of its citizens pursuant to the Twenty-First Amendment since the regulation was considered a restriction on the viewer's access to alcohol rather than a restriction of access to a particular form of expression.[19] Therefore, First Amendment rights were deemed to be only indirectly related since nude dancing was not the subject of the prohibition, rather, the sale of alcohol.[20] The Court noted that a critical factor was that California had not forbidden these acts entirely but had merely proscribed such performances in establishments that it licenses to sell liquor.[21]

This Court recognizes that any analysis of the interplay of Twenty-First Amendment powers and First Amendment rights begins with an examination of *California v. La-Rue*. However, the *LaRue* decision should not be taken as giving the Twenty-First Amendment absolute superiority over the First Amendment. Internal limitations to the applicability of the case do exist. For instance, *LaRue* concerned only incidental infringement of partially protected speech[22] in furtherance of state licensing powers. The Court, considering the questionable communicative value of nude dancing, seems to have been more amenable to its limitation. Also, the ordinance in *LaRue* concerned the licensing of liquor establishments serving liquor-by-the-drink, clearly a legitimate state regulatory area. Furthermore, the existence of alternative forums for performance of nude dancing in establishments not serving liquor-by-the-drink is an important consideration in the Court's opinion. Therefore, all freedom of expression objections to the intrusion of Twenty-First Amendment regulations are not foreclosed, although curtailed, by the isolated facts of *LaRue*.

A subsequent case, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), clarified the effect of the Fourteenth Amendment in light of the State's authority to control liquor. The Court sustained an equal protection claim to a liquor regulatory measure emphasizing that when individual rights were involved, State police powers are to be sharply curtailed. Recognizing the limited impact of the Twenty-First Amendment, the Court stated that "(o)nce passing beyond consideration of the

---

**18.** *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964). *See Craig v. Boren*, 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976); *California v. LaRue*, 409 U.S. 109, 115, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972).

**19.** 409 U.S. at 115, 93 S.Ct. at 395. *See also, Richter v. Dept. of Alcoholic Beverage Control*, 559 F.2d 1168, 1172 (9th Cir. 1977), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978).

**20.** 409 U.S. at 116, 93 S.Ct. at 396; *Richter v. Dept. of Alcoholic Beverage Control*, 559 F.2d at 1172.

**21.** *Compare Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (city ordinance which excluded all forms of live entertainment, including nude dancing, throughout the borough was held to be a violation of the First and Fourteenth Amendments; the First Amendment requires sufficient justification for the exclusion of a broad category of protected expression from the permitted commercial uses) *and New York Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (the state's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where nude dancing occurs).

**22.** At the time *LaRue* was decided, obscenity was defined by *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

Commerce Clause, the relevance of the Twenty-First Amendment to other constitutional provisions becomes increasingly doubtful." The opinion of the Court indicates that infringements on protected speech and other fundamental rights will not be tolerated solely on the basis of enhanced state police powers pursuant to the Twenty-First Amendment.

The case *sub judice* requires that this Court consider Twenty-First Amendment powers of the state to regulate liquor advertising in light of First Amendment protections of commercial speech which is admittedly afforded less protection than other forms of First Amendment activity.[23] The question now arises whether the improved status of commercial speech will limit state police powers under the Twenty-First Amendment.

The Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commissioner of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), devised a four part analysis to be utilized in cases involving commercial speech to determine whether government regulation of commercial speech was forbidden by the First Amendment. This case marks the emergence of commercial speech into the realm of clearly-defined First Amendment protection. The Court considered a First and Fourteenth Amendment challenge to a regulation of the Public Service Commission which completely banned promotional advertising by an electrical utility.[24] In an-

nouncing this intermediate level of protection, the Court clearly distinguished between the full measure of First Amendment protection afforded the expression of ideas and the lesser degree given commercial speech. The Court readily rejected the contention that the state had the complete power to suppress or regulate commercial speech in favor of an approach which considers the nature of the expression and the government interests served by the regulation.[25] To ascertain the viability of a regulation restricting commercial speech, the opinion provides that the courts must examine the content of the communication in order to make a preliminary determination of whether the expression is protected by the First Amendment.[26] To be a protected expression, it must concern lawful activity and not be deceptive or misleading.[27] In formulating its decision, the Court reasoned that some accurate information is better than none at all and that people will discern their own best interests if they are well enough informed.[28] Therefore, forms of communication which are more likely to deceive than inform or which are related to an illegal activity are subject to regulation or suppression.[29] However, the state must also assert that it has a substantial interest in the matter which will be achieved by the restrictions on commercial speech.[30] These restrictions must directly advance the state interest involved and may not be sustained if it provides only ineffective or remote support for the state's purpose.[31] Addition-

---

**23.** Only recently has commercial speech been deemed worthy of limited First Amendment protection. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). This particular variety of speech was deemed unworthy of First Amendment protection solely because of its economic implications. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Central Hudson v. Public Service Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

**24.** *Id.* 447 U.S. at 559, 100 S.Ct. at 2347, 65 L.Ed.2d at 346.

**25.** *Id.* 447 U.S. at 561–62, 100 S.Ct. at 2349–50, 65 L.Ed.2d at 348–49. *See also, High Ol'*

*Times, Inc. v. Busbee*, 456 F.Supp. 1035 (N.D. Ga.1978), *aff'd*, 621 F.2d 141 (5th Cir. 1980) (per curiam) (drug-related material entitled to first amendment protection.

**26.** *Id.* 447 U.S. at 566, 100 S.Ct. at 2351, 65 L.Ed.2d at 351.

**27.** *Id.*

**28.** *Id.*

**29.** *Id.*

**30.** *Id.*, 447 U.S. at 565, 100 S.Ct. at 2350, 65 L.Ed.2d at 350.

**31.** *Id.*

ally, the regulation must be the least restrictive method of accomplishing the state's purpose.[32] Speech that poses no danger to the asserted state interest cannot be regulated.[33]

A subsequent case, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), presented the Court with situation appropriate for application of the newly devised commercial speech analysis announced in *Central Hudson*. This case involved the validity of a city ordinance which imposed substantial restrictions on the erection of outdoor advertising displays within the city for aesthetic and safety reasons. The effect of the ordinance was to permit on-site commercial advertising while prohibiting other commercial and non-commercial communications using fixed-structure signs. Plaintiffs, outdoor advertisers, sought review of the state court decision, arguing that the ordinance was facially invalid on First Amendment grounds and that the city's threatened destruction of the outdoor advertising business was prohibited by the Due Process Clause of the Fourteenth Amendment. Recognizing that commercial and noncommercial speech were afforded differing levels of protection, the Court held that the ordinance violated the First Amendment because of its ban on noncommercial communication while concluding that the ban on commercial speech was appropriate in light of *Central Hudson*. The Court reiterated the test in *Central Hudson* stating first that the protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation. Succinctly, the test provides that: (1) the First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no farther than necessary to accomplish the given objective. The ordinance easily passed all four tests. However, the Court was reluctant to approve a general ban on signs carrying noncommercial speech stating that if the city tolerated billboards at all, it could not choose to limit their content to commercial messages; the city could not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of non-commercial messages.

*Metromedia, Inc.*, while reaffirming the well-established principle that commercial speech is consistently accorded a lesser degree of protection than noncommercial speech, does little else. The Court did not expound on the extent of substantial interest a state must exhibit in order to justify a First Amendment restriction on commercial speech which the opinion in *Central Hudson* omitted. The city's interest in the protection of its populace and its surroundings was sufficient to satisfy the Court's test. The Court balked only because of the similar treatment afforded commercial and noncommercial speech. This Court is aware of the different treatment allotted commercial and noncommercial communications and finds this case to be of little assistance when probing the realm of First Amendment versus Twenty-First Amendment.

*Cable-Com General, Inc., et al v. Crisp*, 81–290–W (W.D.Okl. Feb. 10, 1982),[34] involved First and Fourteenth Amendment challenges by holders of cable television franchises in Oklahoma against the Oklahoma Constitution and statutes prohibiting the advertisement of alcoholic beverages. Plaintiffs are prohibited by the Oklahoma laws from rebroadcasting alcoholic beverage advertisements which originate outside Oklahoma. The

---

**32.** *Id.*

**33.** *Id.*

**34.** *See also, Oklahoma Telecasters Ass'n, et al v. Crisp*, No. CIV–81–439–W (W.D.Okla. Dec. 18, 1981) wherein the Oklahoma district court followed the same reasoning and reached the same conclusions as *Cable-Com* with regard to several Oklahoma telecasting companies.

Court noted that plaintiffs could not feasibly block out these advertisements and that failure to carry out-of-state stations containing alcoholic commercials would place plaintiffs in violation of their franchises.

*California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972), was found to be distinguishable in that the state's interest in regulating licensed bars and taverns outweighed the public's interest in sexually explicit live entertainment, particularly since the state had not totally banned such performances. The Court noted that the plaintiffs here were prohibited from disseminating advertisement of something the public was already aware of and had ready access to in newspaper and magazine materials. Applying the four-part test in *Central Hudson*, the Court reasoned that although the state's interest in the health and welfare of its citizens was legitimate, the state had chosen an impermissible means to achieve its legitimate goal. The restriction on alcoholic advertising was found to be an indirect means of advancing the state's interest and was more extensive than necessary to serve the state's interests. The regulation was not one of time, place and manner but a total prohibition of the dissemination of all information on the subject of alcoholic beverages. This Court is aware of the fact that in Oklahoma the sale of alcoholic beverages is lawful throughout the state, whereas, Mississippi adhers to the local option law. Therefore, the Oklahoma Court noted that ". . . there (was) no claim that the communications suppressed are either misleading or related to unlawful activity." This Court views the Oklahoma courts opinion worthy of consideration because of the recognition by that Court that the citizens of Oklahoma were receiving the suppressed information through other and numerous sources.

Defendants herein stress the fact that pursuant to Mississippi's local option law, the advertising of alcoholic beverages in those counties remaining "dry" creates an "unlawful activity" subject to suppression under *Central Hudson*. However, in those counties choosing to remain dry, it is the *sale* or *consumption* of alcohol that is forbidden under Miss.Code Ann. Section 67–1–1 and not the *advertisement* thereof. The ban on the advertisement of alcoholic beverage is challenged herein and not the local option law. A county or judicial district may choose to prohibit the consumption of alcohol and make its sale or consumption an "unlawful activity". However, the advertisement thereof, if the ban is deemed unconstitutionally, does not involve an "unlawful activity."

■ The Mississippi statutes and the ABC Division regulations controlling and effectively prohibiting the advertisement of alcoholic beverages originated within this state must be scrutinized in light of the strictures of the Twenty-First and First Amendments. We begin our analysis presuming the validity of the state's ban on alcohol advertisements since the state is duly authorized by the Twenty-First Amendment to control the importation, distribution and consumption of alcohol. We further presume the validity of the state's purpose in banning alcohol advertisements; the promotion of temperance. According to the dictates of *Central Hudson*, we conclude that the communications sought to be suppressed herein concern lawful activities and are not misleading. However, this Court has great difficulty concluding that the complete prohibition of alcohol advertising bears a rational relation to the furtherance of an admittedly legitimate state interest, or that it directly advances that interest, considering the convincing evidence produced at trial regarding the mechanical and physical impossibility the state encounters attempting to enforce a complete ban. Utilizing the four-part analysis in *Central Hudson*, this Court concludes that the commercial speech proscribed *sub judice* is entitled to First Amendment protection since it does not involve an illegal activity [35] and has not

---

**35.** An approach to the validity of the ban based on whether a county is "wet" or "dry" according to the Local Option Law appears unworkable to this Court because of the vast array of alcohol advertisements received from outside sources in those counties choosing to remain

been represented to be misleading. Although the Court concludes that the governmental interest asserted is substantial and legitimate, we also conclude that the method of regulation, a complete prohibition, practically, does little to directly advance the government's interest in promoting temperance. Defendants failed to produce concrete scientific evidence to substantiate their position that alcohol advertising artificially stimulates consumption thereof. Furthermore, all residents of Mississippi are saturated with alcohol advertisements that are originated outside the state and distributed within the state. Accordingly,

"the state interest in temperance can be served through permissible time, place and manner restrictions on price information. The state may discourage the use of alcoholic beverages by choosing to ban their sale entirely or through taxes. The state cannot, however, completely suppress truthful information about this lawful product out of a paternalistic concern for the product's effect. The state's protectiveness cannot be based on maintaining public ignorance." [36]

*Shirley, A. Wise, et al. v. Tennessee Alcoholic Beverage Comm'n, et al.*, Chancery Court for Davidson County, Part One, Nashville, Tenn., No. 81–325–I (July 30, 1981) at 5.

Plaintiffs further contend that the challenged statutes and regulations constitute a denial of equal protection of the law, guaranteed to them by the Fifth and Fourteenth Amendments. Plaintiffs argue that the selective enforcement of the statutory ban, combined with the artificial distinction created by ABC Regulation 6 between Mississippi and out of state media (prohibiting any person from "originating" advertisements for alcoholic beverages in the State of Mississippi), amount to a denial of equal protection. Essentially, Plaintiffs contend that the statutes and regulations, and their enforcement, create two distinct classes of advertisers. The first class, Plaintiffs allege, consists of the publishers of all national magazines, the publishers of large national and regional newspapers, the owners of all cable television facilities in Mississippi and elsewhere, the owners of out of state radio and television stations whose broadcasts are carried into Mississippi, the owners of outdoor advertising signs erected along the interstate entrances to Mississippi, and all other media advertisers who publish, originate, disseminate or broadcast alcoholic beverage advertisements into Mississippi from locations outside the State of Mississippi. This large group of advertisers is permitted to carry alcoholic beverage advertisements in Mississippi. The smaller class consists of the limited number of Mississippi newspaper publishers, radio and television station owners and advertising companies which are physically located within the State of Mississippi. This class is prohibited from carrying alcoholic beverage advertisements. Plaintiffs maintain that this is an irrational and arbitrary classification in violation of their equal protection of the laws.

Defendant rebuts Plaintiffs' argument, contending that under an equal protection analysis, unless a statutory classifi-

"dry". This Court cannot interpret "illegal activity" to have one meaning in one county and another meaning in the county adjacent to it.

**36.** The Tennessee Court was also confronted with a local option preference in Tennessee. The court easily disposed of this problem, to wit:

"The wholesalers next insist that the price information ban is justified because the information would promote transactions illegal in some Tennessee counties. This allegation is not supported by affidavits stating how information on liquor prices in a "wet" Tennessee county will spur illegal activities in another

"dry" county. Citizens of "dry" counties are currently subjected daily to information about the availability of liquor in neighboring areas. Only information promoting a product which in itself is illegal, such as narcotics or prostitution, is denied commercial speech protection. *Pittsburg Press v. Pittsburg Comm'n on Human Rights*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Information on liquor for sale within a "dry" county would of coarse not be protected by the First Amendment."

*Shirley A. Wise, et al*, No. 81–325–1 at 6.

cation infringes on "fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Friedman v. Rogers*, 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)). Defendant submits that there is no suspect class or fundamental personal right which is infringed by the challenged statutes so that the "rational relation" test applies. By establishing the two classes, those persons, firms or corporation originating alcoholic beverages in this state and those originating advertisements outside this state, Defendant submits the Mississippi Legislature decided to control intrastate alcoholic beverage advertisements and not to control those coming into the state. Defendant maintains that this legislative decision is rationally related to its legitimate state interest; controlling the artificial stimulation of alcoholic beverage sales and consumption

> "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, over decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."

*Friedman v. Rogers*, 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)). An allegedly discriminatory statute will not be overturned unless " . . . the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). Although state legislatures are "accorded wide latitude in the regulation of their local economies under their police powers", *New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2516, the legislative action must be "rationally related to the accomplishment of a legitimate state interest." *Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d 1029, 1039 (5th Cir.), *reh. en banc denied*, 634 F.2d 1355 (5th Cir. 1980), reversed in part and remanded, —— U.S. ——, 102 S.Ct. 1070, 71 L.Ed.2d 152. This test requires that the legislation constitute a means that is "reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation. . . ." *Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d at 1039.

■ The proof at the trial of this cause revealed convincingly that the residents of the State of Mississippi are literally inundated with liquor advertisements from sources originating outside the state. This constant and ready access and exposure to advertisements of alcoholic beverages permeates "wet" and "dry" counties alike. Therefore, it is inconceivable to this Court how the Mississippi Legislature proposed to justify the complete prohibition of alcoholic beverage advertisements from outside sources. Although we find the state's goal of promoting temperance legitimate and commendable, the means chosen to advance this cause bear no relation to this purpose. Plaintiff's expert produced substantial and convincing proof at trial regarding the lack of credible evidence, scientific or otherwise, which lends any support to the theoretical connection between an alcoholic beverage advertising ban and moderation in consumption of alcoholic beverages. Indeed, the defendant's expert admitted that he had conducted no investigation of this hypothesis in Mississippi. Moreover, the testing of a comparable ban on alcoholic beverage advertising in British Columbia was abandoned .because of the constant influx of alcoholic beverage advertisements into British Columbia from outside sources.

Therefore, this Court concludes that the state's complete ban on alcoholic beverage advertising originating within this state in no way rationally furthers the state's inter-

est in controlling the artificial stimulation of the sale and consumption of alcoholic beverages. This legislation has not been demonstrated to bear a fair and substantial relation to the legislative objective. Indeed, it operates only to penalize those groups desiring to disseminate such information when it originates within the state. As stated by the Fifth Circuit, "... (m)ere disapproval is not enough constitutionally to justify bringing the full weight of the (state's) regulatory apparatus into play ... (T)he supposed evil does not inhere in mere simultaneous presence." *Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d at 1040.[37]

An order in accordance with this opinion shall be submitted by the parties as provided by the local rules.

---

**37.** Plaintiffs also advance an allegation of denial of due process under the Fourteenth Amendment. The Court finds an analysis of the due process question unnecessary in light of the Court's holding on the equal protection claim since the standard of review for both allegations are the same. *See, Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213–14, 57 L.Ed.2d 91 (1978); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *Anderson v. Winter*, 631 F.2d 1238, 1241 (5th Cir. 1981).